**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

CASEY G. H.,

        **Plaintiff,**

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

**Civil Action 2:25-cv-583**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Chelsey M. Vascura**

**REPORT AND RECOMMENDATION**

Plaintiff, Casey G. H. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security ("Commissioner") denying his

application for a period of disability and disability insurance benefits ("DIB"). This matter is

before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors

(ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 12), and the

administrative record (ECF No. 7). For the reasons that follow, the undersigned

**RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-

disability determination and **REMAND** this matter pursuant to Sentence 4 of § 405(g).

## I.     BACKGROUND

Plaintiff protectively filed his DIB application in June 2019, alleging disability beginning

April 30, 2016. (R. at 208–14.) That application was denied initially, on reconsideration, and by

an Administrative Law Judge ("ALJ"). (*Id*. at 97–99, 107–13, 16–32.) Plaintiff sought judicial

review of that determination in this Court, where the parties jointly moved to remand the matter. (*Id*. at 1536–37.)

Upon remand, ALJ Jeffrey Hartranft ("ALJ Hartranft") held a hearing. (*Id*. at 1463–99.) Plaintiff, who was represented by council, and a vocational expert ("VE") appeared and testified. (*Id*.) On December 6, 2023, ALJ Hartranft issued a second unfavorable determination, which became final on March 27, 2025, when the Appeals Council declined to accept jurisdiction over Plaintiff's exceptions. (*Id*. at 1425–62, 1416–22.)

Plaintiff seeks judicial review of that second unfavorable determination. He contends that ALJ Hartranft committed reversible error when evaluating a medical opinion from his physical therapist. (Pl.'s Statement of Errors 8–11 ECF No. 11.) The undersigned agrees.

## II. THE ALJ'S DECISION

ALJ Hartranft issued the second unfavorable determination on December 6, 2023. (R. at 1425–62.) He initially determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2021. (*Id*. at 1431.) At step one of the sequential evaluation

process,[1] ALJ Hartranft found that Plaintiff had not engaged in substantial gainful activity from

his April 30, 2016 alleged onset date, through his December 31, 2021 date last insured. (*Id*.) At

step two, ALJ Hartranft determined that Plaintiff had the following severe medically

determinable impairments: Degenerative Joint Diseases of the Right Shoulder/SLAP tear with

surgeries; Degenerative Disc Disease of the Cervical Spine; Degenerative Disc Disease of the

Thoracis Spine; Degenerative Disc Disease of the Lumbar Spine; Arthritis of the Right Knee

with a history of right knee surgery; a history of Heart Attack, status/post coronary stent

placement; Type II Diabetes Mellitus; Brachial Plexopathy of the Right Arm; Vision Loss of the

Left Eye; Major Depressive Disorder; and Generalized Anxiety Disorder. (*Id*. at 1431.) At step

three, ALJ Hartranft determined that Plaintiff did not have an impairment or combination of

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

Part 404, Subpart P, Appendix 1. (*Id*. at 18.)

ALJ Hartranft then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he could lift up to exertional levels with both arms, but lifting with right arm would be limited to 10 pounds; he could frequently push and/or pull with right arm; he could frequently operate foot controls with the right foot; he could occasionally climb ramps and stairs; he should avoid climbing ladders, ropes, and scaffolds; he could frequently stoop; he could occasionally kneel and crouch; he should avoid crawling; he could frequently reach and occasionally reach overhead with the right upper extremity; he could frequently handle and finger with his right hand; he should avoid exposure to workplace hazards, such as unprotected heights and machinery; he could perform routine and repetitive tasks, involving only simple work-related decisions and with few, if any workplace changes; and he could occasionally interact with the general public.

(*Id*. at 1435.)

At step four, ALJ Hartranft relied on the VE's testimony to determine that Plaintiff could

not perform his past relevant work. (*Id*. at 1449.) Relying on VE's testimony again at step five,

ALJ Hartranft determined that considering Plaintiff's age, education, work experience, and RFC,

there were jobs that existed in significant numbers in the national economy that Plaintiff could

perform including the representative jobs of routing clerk, inspector, and marker. (*Id*. at 1449–

50.) Accordingly, ALJ Hartranft determined that Plaintiff was not disabled as defined in the

Social Security Act during the relevant time frame. (*Id*. at 1450.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision

by the Commissioner as long as it is supported by substantial evidence and was made pursuant to

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As explained above, Plaintiff contends that ALJ Hartranft committed reversible error when evaluating a medical opinion from his physical therapist, PT Tom. (Pl.'s Statement of Errors 10–15, ECF No. 8.) This contention has merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions  . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

---

[3] Because Plaintiff's application was filed in 2019, it is subject to regulations governing applications filed after March 27, 2017.

Here, PT Tom examined Plaintiff on March 19, 2019. (R. at 467–72.) In her functional capacity evaluation report, she wrote that Plaintiff was "currently demonstrating the ability to work at a sedentary physical demand of work." (*Id*. at 471.) She further wrote as follows:

> He is currently functioning at a sedentary PDL based on lifting/carrying activities. He is able to carry up to 10# and lift from waist level up to 15# on an infrequent basis. He is unable to lift overhead 2/2 R shoulder pain/weakness. The client is unable to lift from the floor 2/2 R knee pain/instability. He is limited with overhead reaching and FW reaching 2/2 R shoulder pain/weakness. Crawling, squatting, kneeling, climbing, prolonged standing and balance are restricted 2/2 R knee pain/instability.

(*Id*. at 472.)

ALJ Hartranft determined that PT Tom's opinion was non-persuasive. (*Id*. at 1441.) He discussed it as follows:

> In addition, I considered the opinion of Jacquelyn Tom, a physical therapist, who conducted a Functional Capacity Evaluation on March 19, 2019, due to claimant's right shoulder impairment, and opined the claimant demonstrated the ability to perform work at the sedentary physical demand level of work (12F)5. Accordingly, I find the physical therapist's opinion to be nonpersuasive, as said opinion is neither consistent with nor supported by the updated record received at the hearing level, including the opinions of Dr. Braun and Dr. Lin, along with the claimant's return to work, even if temporary. Moreover, I note that the physical therapist is not an acceptable medical source under the Social Security Administration's current evidentiary rules. Further, I note Ms. Tom did not specifically address the Social Security Administration's determinations of whether the claimant's physical impairments are severe by meeting the duration requirements for establishing the presence of a severe, medically determinable impairment, whether the severity of the claimant's severe physical impairments meet or medically equal the criteria of a medical listing(s), or whether the claimant's functional limitations prevent him from doing his past work or other work. In addition, I note she did not provide a function-by-function analysis of the limitations resulting from the claimant's severe physical impairments to determine his residual functional capacity in programmatic terms. To the contrary, I find that the updated record received at the hearing level supports the physical limitations found within the above-stated RFC, which adequately account for and accommodate the functional limitations resulting from the claimant's severe physical impairments by limiting the nature of his work activities, as stated therein, due to the limiting effects of his right shoulder impairment, his right knee impairment, his spinal impairments, diabetes, and a history of heart disease, along with vision loss in his left eye.

7

(*Id*. at 1441–42.)

As this discussion demonstrates, ALJ Hartranft determined that PT Tom's opinion was unpersuasive, in part, because it was "neither consistent with nor supported" by updated records, including opinions from "Dr. Braun and Dr. Lin." (*Id*.) Substantial evidence does not support that determination because the undersigned cannot locate an opinion from any provider named Dr. Braun. The undersigned considered whether "Dr. Braun" may have been a typographical error given that the record contains treatment notes from Dr. Brad Brautigan. But the undersigned was likewise unable to locate a medical opinion from Dr. Brautigan. Nor did ALJ Hartranft evaluate an opinion from either Dr. Braun or Dr. Brautigan, which further suggests that no such opinion exists. And even such an opinion existed, ALJ Hartranft's failure to evaluate it would likely be reversible error.

Moreover, contrary to ALJ Hartranft's explanation, the undersigned is not persuaded that PT Tom entirely failed to "provide a function-by-function analysis" of Plaintiff's limitations. To be sure, the absence of a sufficiently specific function-by-function analysis can constitute a valid reason to discount a medical opinion. *See McCoy v. Comm'r of Soc. Sec.*, 356 F.Supp.3d 704, 710-711 (S.D. Ohio 2018) (finding ALJ did not err by discounting a medical opinion because, in part, it lacked a function-by-function analysis); *Elliott v. Comm'r of Soc. Sec.*, No. 2:19-CV-3445, 2020 WL 746597, at *8 (S.D. Ohio Feb. 14, 2020), (finding ALJ did not err by giving medical opinion only some weight because, in part, the opined limits were too indefinite), *adopted and aff'd,* No. 2:19-CV-3445, 2020 WL 5797959 (S.D. Ohio Sept. 29, 2020).

And some of PT Tom opined limits arguably lacked specificity. For instance, PT Tom wrote that Plaintiff could carry up to ten pounds and lift up to fifteen pounds from waist level on an "infrequent" basis. (R. at 472.) The SSA regulations do not, however, define the term

8

"infrequent." *See Locatelli v. Soc. Sec. Admin.*, No. 2:22-CV-00014, 2023 WL 4921505, at \*6 (M.D. Tenn. Aug. 1, 2023), *adopted and aff'd sub nom.*, 2023 WL 5538974 (M.D. Tenn. Aug. 28, 2023) (citing *Mitchell v. Berryhill,* No. 1:15-cv-168, 2017 WL 886494, at \*2 (E.D. Tenn. Mar. 6, 2017) and *Wearner v. Comm'r of Soc. Sec.*, No. 1:18-cv-28, 2019 WL 1938820, at \*9 (E.D. Tenn. Apr. 15, 2019), *adopted and aff'd*, 2019 1929924 (E.D. Tenn. Apr. 30, 2019)). Likewise, PT Tom wrote that Plaintiff was "limited" in overhead and forward reaching secondary to his right shoulder pain and weakness and "restricted" in crawling, squatting, kneeling, climbing, and prolonged standing and balance secondary to right knee pain and instability. (R. at 472.) These limits may have lacked the precision necessary for vocational analysis.

But PT Tom also wrote that Plaintiff was "unable" to lift overhead secondary to right shoulder pain and weakness and lift from the floor secondary to right knee pain and instability. (*Id*.) Those restrictions are considerably more specific. Indeed, absent some reasoned explanation to the contrary, an inability to perform a function appears equivalent to a limitation to never being able to perform that function.

Finally, ALJ Hartranft "noted" that "a physical therapist is not an acceptable medical source." (R. at 1441.) That distinction is not relevant under the current regulations. A medical opinion is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2). A medical source, in turn, includes "an individual who is licensed as a healthcare worker by a State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." 20 C.F.R. §§ 404.1502(d); 416.902(d).

Accordingly, a licensed physical therapist's conclusions in a functional capacity examination constitute medical opinions that an ALJ must evaluate, with particular attention paid to supportability and consistency. *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *5 (6th Cir. June 12, 2024). Although ALJ Hartranft did not explicitly indicate that he discounted PT Tom's opinion because she was a physical therapist, his discussion strongly suggests that this fact influenced his analysis. To the extent it did, that was error.

For all these reasons, the undersigned concludes that ALJ Hartranft erred when evaluating PT Tom's opinions. Plaintiff's contention of error therefore has merit.

**V.      RECOMMENDED DISPOSITION**

Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** the Commissioner's non-disability determination and **REMAND** this matter.

**<u>PROCEDURE ON OBJECTIONS</u>**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report

10

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


      **IT IS SO ORDERED.**


      /s/ *Chelsey M. Vascura*
      CHELSEY M. VASCURA
      UNITED STATES MAGISTRATE JUDGE